*EX PARTE* LANCASTER AND FREE, *IN RE* THE SOUTHERN MUTUAL BUILDING AND LOAN ASSOCIATION v. RYAN.

1. REPORT OF SALES—PARTIES—FORECLOSURE.—It is not error in a Circuit Judge to confirm the report of sales by the master in foreclosure, when there is an action pending by the defendant in foreclosure in possession of the property, against the purchasers at master's sale, to set aside the sale, to which action the plaintiff, mortgagee, has not been made a party.

2. EVIDENCE—SALE.—The testimony in this case is sufficient to support the conclusion reached by the Circuit Judge, that there was no combination or agreement to chill the sale.

Before GARY, J., Barnwell, April 4, 1895.    Affirmed.

The opinion fully states the facts.

*Messrs. Robt. Aldrich* and *Bellinger, Townsend & O'Bannon*, for appellant.

*Messrs. Patterson & Holman*, contra.

March 20, 1896.  The opinion of the court was delivered by

MR. JUSTICE POPE.  A decree was pronounced in the action of the Southern Mutual Building and Loan Association of Atlanta, Georgia, as plaintiff, against G. K. Ryan, J. W. Lancaster, B. T. Rice, T. S. Cave & Brother, as defendants, dated 6th December, 1894, in the Court of Common Pleas for Barnwell County, in this State, requiring the master for Barnwell County to sell a certain lot of land on which was located a block of brick buildings, as the prop-

erty of the defendant, G. K. Ryan, to pay the two mortgages made to the plaintiff for more than $5,000, and any surplus thereafter remaining to be applied to the mortgage debt created by the defendant, G. K. Ryan, to his codefendants, J. W. Lancaster, B. T. Rice, T. S. Cave & Brother, by reason of their endorsements of certain rates of said G. K. Ryan, and for his accommodation. Such sale was ordered to be made on the first Monday of February (which occurred on the fourth day of that month), 1895, for one-third in cash, and the balance on a credit of one and two years, &c. In pursuance of this order, and after a careful compliance with its terms, A. H. Patterson, Esq., as said master for Barnwell County, did sell said block of brick buildings, and the same were knocked down to J. W. Lancaster and A. F. Free, as the highest bidders, at the price of $5,230; the said master was paid the one-third in cash, and the remaining two-thirds were secured by the bond and mortgage of the property by J. W. Lancaster and A. F. Free, and he then delivered a deed to the purchasers. One of the provisions of the decree was that upon the production by the purchaser at said sale of the master's deed for said premises, that such purchasers should be let into possession of said premises. J. W. Lancaster and A. F. Free produced the deed from the master for the property, but G. K. Ryan refused to yield possession to them. Under these circumstances the said Lancaster and Free presented all these facts to the court by their petition, *in re* the original suit for foreclosure, praying in their petition that the said G. K. Ryan be attached as for a contempt of this court; that the petitioners be put into possession of these premises bought by them, and for such other and further relief as might be consistent with equity, &c. This petition was served upon the said G. K. Ryan, together with a written notice that the petitioners, upon such petition, the judgment and record in the case of Southern Mutual Building and Loan Association against G. K. Ryan, would move, before Judge Ernest Gary, at his chambers, in Walterboro, S. C., on the 21st day of February, 1895, at

12 o'clock M., or as soon thereafter as counsel could be heard, for an order to have the said G. K. Ryan attached as for a contempt of court, in refusing to let the petitioners into possession of the lots described in the petition, upon the demand being made for the same, and upon the production of the master's deed for said lots and for an order to have the petitioners put into possession of the said premises, and for such other and further relief as to the court should seem meet and proper in the premises. To this petition, G. K. Ryan made a return, that no order of court requiring him to yield possession of said lots to purchasers at the master's sale, and upon the production of the master's deed to said lots of land, had ever been exhibited to him; that the sale under which petitioners claim their title was a fraudulent sale, as he is informed, and is null and void, by reason of an agreement entered into between the purchasers, J. W. Lancaster and B. T. Rice and T. S. Cave, whereby they and others were excluded from bidding; that the said G. K. Ryan has begun an action in the Court of Common Pleas, which is now pending, to set aside said sale and to vacate and annul their title deed, and that a copy of the complaint in said action, begun by the said R. K. Ryan, is annexed as a part of this return; that the statements of B. T. Rice and T. S. Cave, as set up in said complaint, were derived from said parties; and the reason why he does not present, along with this return, an affidavit, or affidavits, embodying the statement of B. T. Rice and T. S. Cave, is because they refused to give them, on an application to them therefor. The complaint referred to in the return of G. K. Ryan sets out all the history of the original action, substantially as set forth by petitioners, except that it alleges that, prior to the institution of the action for foreclosure of the two mortgages held by the Southern Mutual Building and Loan Association, J. W. Lancaster informed B. T. Rice, who was a co-endorser with him for G. K. Ryan, that he had made his arrangements to buy the said property at said sale in foreclosure, and that he would make

it bring enough to satisfy, not only the debts due to the plaintiffs ʻin the foreclosure suit, but also the amount for which they were liable as endorsers, and that he need not give himself any further concern about it, or words to that effect. And he is informed that J. W. Lancaster had a similar understanding with T. S. Cave & Bro.; that the sale as made was for an amount less than sufficient to pay all the mortgages as agreed, but was only sufficient to pay the amount due the Southern Mutual Building and Loan Association mortgages; that after the sale to Lancaster and Free, Lancaster refused to carry out his previous arrangements with B. T. Rice and T. S. Cave, and declared that he would still hold them liable, as co-endorsers, along with himself and others, on the notes of G. K. Ryan, discounted by the banks at Barnwell, and that when B. T. Rice and T. S. Cave threatened to impeach the sale and set it aside, then the said J. W. Lancaster entered into a written agreement, whereby he released said Rice and Cave from any liability as co-endorsers on G. K. Ryan's paper (notes); that said sale of the property was for less than its value, and he is informed that B. T. Rice, T. S. Cave and others were deterred from competing at said sale, and thereby making the property bring its true value, by reason of the existence of said agreement between said J. W. Lancaster, B. T. Rice, and T. S. Cave, which agreement was known to others besides the parties themselves; and in the prayer of the complaint, judgment is asked, declaring such sale null and void, that the title deed be canceled, that the premises be resold, and for such ôther relief, &c. At the hearing of the motion for this sale, his honor, Judge Ernest Gary, passed the following order: "The matter having come on to be heard, pursuant to notice, and after hearing the petition, return, and affidavits read, and hearing Mr. Patterson for the motion, Mr. Townsend, contra: Ordered, that the hearing of this motion be continued until the coming in of the master's report of sale. It is further ordered, that it be referred to Hon. A. H. Patterson, master, as special referee, to take

the affidavits of B. T. Rice and T. S. Cave, to be used on behalf of the respondent at the hearing of this motion under section 402 of the Code.   It is further ordered, that, in the meantime, and until the further order of this court, W. Gilmore Simms, Esq., clerk of this court, be, and is hereby, appointed receiver to collect the rents of the premises mentioned in the petition, and hold the same subject to the order of this court."

At the coming in of the master's report on sales, hereinafter set out, at the March, 1895, term of the Court of Common Pleas, the matter came up in a motion to confirm said report.   G. K. Ryan resisted the motion on the matters set out in his return, in his complaint in his action against J. W. Lancaster and E. F. Free, and the testimony of B. T. Rice and T. S. Cave.   On the other side, the affidavits of J. W. Lancaster, A. F. Free, T. J. Bolton, and a letter from G. K. Ryan to J. W. Lancaster, on 3d February, 1895, were submitted, in addition to their previous showing.

Judge Ernest Gary then passed the following order: "On reading and filing the report of the master on the report of sales herein, and after hearing argument on the part of Messrs. Patterson & Holman for a confirmation of said report, and Messrs. Robt. Aldrich, Esq., and Bellinger, Townsend & O'Bannon against the confirmation, it is ordered and adjudged, that the report of the master be, and the same is hereby, confirmed, and made the judgment of this court. The said G. K. Ryan having given notice of his intention to appeal to the Supreme Court from this order, it is directed that the order appointing W. Gilmore Simms receiver be continued pending said appeal, to collect the rents of the property."

G. K. Ryan appeals upon these grounds:

1. His honor erred in confirming the report of sale, because the evidence showed, and his honor erred in not finding as a matter of fact, that there was an agreement between the purchasers and other parties, prior to the foreclosure

sale, which had the effect of chilling the bidding and pre-venting·fair competition.

2. Because the evidence showed, and his honor erred in not finding as a matter of fact, that other parties, to wit: B. T. Rice and T. S. Cave, would have made the property bring a higher price, but for the agreement made with them prior to said sale by the purchaser, respondent herein, that he would make the property bring a higher price than it sold for, which agreement he failed to keep, and of which the appellant had knowledge, and by which the property of the appellant was sacrificed.

3. Because it was error of law in the presiding judge to confirm the report of the sale, when there was a regular action pending to set aside said sale, on the ground of fraud and chilling the bidding.

So far as the third ground of appeal is concerned, we do not see that his honor erred in confirming this report, because the action of Ryan *v.* Lancaster and Free was pending to set aside the sale. How could the appellant seek to divert vested rights of the Southern Mutual Building and Loan Association, in the bid of Lancaster and Free, when such association was not a party to such new action of G. K. Ryan? It is true, an amendment might have been made to Ryan's new action, by which this building and loan association might have been made parties, but we could not undertake to say that such association might not have successfully denied the right of said Ryan, in a new action, to make them parties defendant thereto. We express no opinion one way or the other as to this right of amendment, but certain it is, that under the complaint of Ryan, as it here appears, this was not error in Judge Gary.

We will consider the first and second grounds of appeal together for convenience. At the outset we may remark, that we have given the matter careful consideration, for if there is a matter that more concerns justice than another, it is that duty of courts to prevent im-

position upon the unfortunate; and whenever wrong doing, such as fraudulent contributions to chill or stifle fair competition at judicial sales is made to appear, instantly a duty is laid upon courts to root it out, to lay it bare, and to set it aside.

Our decisions are squarely up to duty in this instance. *Barnet* v. *Bath Paper Mills*, 13 S. C., 158; *Hernden* v. *Gibson*, 38 S. C., 357, may be cited in illustration of this truth. But while courts should be stern in the punishment of wrong, they should be quite as fearless in the protection of innocence, when such a charge is made without sufficient ground therefor. We have been struck with the absence in all these written statements, relating to the sale as made by the master, of any information that any single individual or individuals stood ready to pay one dollar more for this property than was bid by J. W. Lancaster and A. F. Free, and it is equally patent therefrom, that the only person who states that the property was worth more than was bid, is Mr. G. K. Ryan himself; while, on the other hand, Mr. Bolton says it brought its full value, as do also Mr. Lancaster and Mr. Free There is another circumstance apparent in these statements, that the only reason assigned by B. T. Rice and T. S. Cave for looking after the sale, was to try and make the property bring a sufficient sum to save them harmless, as Mr. Ryan's endorsers, not that they regarded the property in itself valuable or desirable. The only matter which has seriously impressed us, is the charge that Captain Lancaster made an agreement with Messrs. Rice and Cave, that might have chilled the sale by withdrawing the latter two as possible bidders. If the statements, as embodied in the complaint itself, of Mr. Ryan, had been substantiated, as there made, the trouble might have been serious. But Mr. Bolton, who was there charged to have been prevented from bidding by the arrangement between Lancaster with Rice and Cave, comes out in his affidavit and states very emphatically that such was not the case. Then, again, when the statements in the complaint as to what was the arrange-

ment between Lancaster, Rice, and Cave, are compared with the statements as made under oath by Rice and Cave themselves, it will be seen that another great disparity exists between them; for these gentlemen frankly admit that Mr. Lancaster claimed that, in his statements to them as to the price at which he intended Mr. Ryan's property under mortgage should be sold, he included some real estate that had never yet been sold. It is quite true, and we have not overlooked this significant circumstance, that Captain Lancaster did, after the sale, when Rice and Cave complained that he had not carried out his agreement with them, in so conducting the sale of Ryan's property that the notes they had endorsed should be protected, did finally release them therefrom, upon the payment by each of $50, to assist in the expense of the foreclosure of the mortgage of Ryan to his endorsers on other real estate. But, it seems to us, that this might still be in keeping with the original agreement between Lancaster and Rice and Cave, as explained by Captain Lancaster, as it concerned and included the property under the additional mortgage not included in the suit for foreclosure.

In the second ground of appeal it is stated that appellant had knowledge of this agreement of Lancaster with Rice and Cave. We cannot recall in the "Case" the statement of any such fact. Indeed, the letter of Mr. Ryan on the 3d February, 1895, to Capt. Lancaster, negatives any such knowledge. Here is the letter referred to:

"Barnwell, S. C., Feb. 3d, 1895.—Dear Capt.: It was not until between one and two p. m. yesterday that I found out the Bank of Barnwell would not accept my proposition to protect my endorsers. I was about ready to comply with J. O. Patterson's requirements looking to the security of yourself and other endorsers, but the whole thing hinged upon the bank's acceptance of my proposition made nearly thirty days ago. So when Gen. Hagood refused yesterday to wait any longer on you gentlemen, my arrangement could not be consummated. I have exhausted every means I can think

of for the protection of myself and friends, and failing to get assistance, I feel it but right to inform you of my failure, and to request that at the sale, to-morrow, you take steps to protect yourself. Thanking you for your kindness in the past, and regretting, more than I can express, any loss I may be the cause of you experiencing, I am yours very truly, G. K. Ryan."

We regard this a frank, manly letter, and it occurs to us that Mr. Ryan, in the sentence where he says: "and to request that at the sale, to-morrow, you take steps to protect yourself," he really invited Capt. Lancaster to purchase on the best terms he could, if necessary to his protection.

We cannot, for these reasons, support the appellant in either one of these exceptions.

It is the judgment of this court, that the order of the Circuit Court appealed from be affirmed, and that the action be remanded to the Circuit Court for such further proceedings as may be necessary.